IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REYNALDO YBARRA ZAMORA, § | | |
| TDCJ No. 1989227, § | | |
|     Petitioner, § | | |
| § | | |
| V. § | A-18-CV-787-LY | |
| § | | |
| LORIE DAVIS, § | | |
|     Respondent. § | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner, Reynaldo Zamora, is pro se in this matter and was granted leave to proceed *in forma pauperis*. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 8), and Petitioner's Reply (ECF No. 12). For the reasons set forth below, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus be denied.

**STATEMENT OF THE CASE**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 22nd Judicial District Court of Hays County, Texas. A jury found

Petitioner guilty of aggravated kidnapping, and the trial court assessed punishment at a term of sixty years confinement.

## A. Background

The First Court of Appeals summarized the testimony presented at Petitioner's trial as follows:

> In 1986, the complainant and a friend, both then girls under the age of ten, were walking down a street in Hays County, Texas. A white Corvette pulled up beside them, and the driver asked whether they knew the location of a mutual friend, Vera. The driver identified himself as "Ray Zamora" and claimed to be Vera's uncle. He asked the girls to help him find Vera, and they agreed. After driving around the town, he dropped the complainant's friend off at the same location where he had found them.
>
> The complainant also attempted to leave the car, but Zamora pulled her by her hair and forced her to remain as he sped away. With one hand, Zamora grasped the complainant's chest under her shirt. With the other hand over her clothes, he touched and squeezed her vagina. Zamora then dropped the complainant off at her bus stop, and he threatened that if she told anyone anything about the incident he would "come back for" her. The complainant nonetheless informed the police.
>
> Zamora was arrested. The complainant and her friend were able to identify his white Corvette as the same one that their kidnapper drove. While the girls initially had difficulty identifying a suspect, they each selected Zamora's photograph from a photo lineup.
>
> Zamora posted bond and was released from jail. He later testified that shortly thereafter he was involved in a car accident and was in a coma for 52 days, which caused him to forget his arrest. Zamora failed to appear in court, and a new warrant was issued for his arrest.
>
> Twenty-seven years later, in 2013, Zamora was arrested on the outstanding warrant in Hays County. He filed a motion to dismiss the 1986 kidnapping charges against him due to violation of his right to a speedy trial. Zamora claimed that he had been arrested several times between 1986 and 2013, including arrests in Maverick County, Travis County, and the Commonwealth of Kentucky. He argued that at no point during these arrests, some of which resulted in convictions and imprisonment in state custody, was he made aware of the ongoing charges against him in Hays County, nor was any attempt made to bring him to trial there.

During his arrest in Maverick County in 1992, Zamora was found with multiple sets of identification cards, some of which were in the name of "Enrique Mata Jimenez." Zamora appeared on the Maverick County charges as Enrique Mata Jimenez, and he applied for counsel as an indigent under the same name. Zamora claimed that "Jimenez" was the name of his Mexican brother, and he gave an alternate spelling of his name ("Jimmenz") when testifying in this case. At some point later, Zamora left custody without being paroled; an escape warrant from Maverick County identified his name as "Enrique Mata–Jimenez" but listed in the comments "Reynaldo Ybarra–Zamora." Zamora claimed that he did not escape custody in Maverick County, but instead he was brought to the border as an illegal immigrant and told to return to Mexico.

In his motion to dismiss the kidnapping charges, Zamora noted a few specific incidents when he was in custody, and he contended that Hays County was negligent in bringing him to trial. First, in 2000, Zamora was incarcerated in Kentucky, due in part to the fugitive warrant from Hays County, which failed to extradite him. Second, Zamora was incarcerated on other charges in Maverick County in 2002, under the same name and date of birth as listed in the Hays County warrant. He was paroled in 2005. Third, in 2007, he was arrested in Austin. His parole on the Maverick County conviction was revoked in 2008, only for him to be paroled again in 2010.

Zamora alleged that his kidnapping defense would be prejudiced by the lack of a speedy trial because he would not be able to secure alibi evidence from two witnesses who had passed away. He specifically claimed that at the time he was alleged to have committed the kidnapping, he was working in Colorado with "Colonel Sanders" and "Dr. Darryl Havert." Zamora testified that both of these witnesses passed away in 2007. He argued that because he and his brother, Enrique Mata Jimenez, looked alike, that Jimenez probably had committed the kidnapping while using his identity. He also claimed that no one knew where his brother was, and he was incapable of finding him. Zamora provided no other proof of these assertions beyond his testimony.

At the hearing on the motion to dismiss, the State presented evidence that Zamora had a history of using different aliases and dates of birth when in custody. In addition to his appearance as "Enrique Mata Jimenez," he would alternate between spelling his name as "Raynaldo" and "Reynaldo," switch his middle and last names, and give his date of birth as being in either 1954 or 1958.

The State stipulated that a number of items of evidence relating to the case were missing. These included items purchased from a gas station while Zamora was with the two girls, hair samples and fingerprints from the girls, the original fingerprint card taken from Zamora during the 1986 arrest, photos of the Corvette, hair samples taken from the Corvette, and the girls' original recorded statements. The

3

State also conceded that the hair samples taken from the Corvette did not match the girls' samples, and thus was exculpatory evidence.

The trial court denied the motion to dismiss, and wrote on the docket sheet that the delay was attributable to Zamora's "own actions, lack of previous request for speedy trial" and that there was a "lack of prejudice" to him under the circumstances.

After Zamora's initial motion to dismiss but before voir dire, the State admitted that the Department of Criminal Justice Parole Division had sent a request to Hays County in 2010, asking about the status of the kidnapping cases. However, Hays County was unable to locate the file on the kidnapping charges, and at that time it was able to locate only the indictment, motion for continuance, and capias warrants. The State conceded that it was unable to replicate the file until 2013. Zamora asked the court to reconsider the motion for to dismiss, but the trial court once again denied the motion.

A jury convicted Zamora of aggravated kidnapping.[1] The court assessed punishment at 60 years' imprisonment. Zamora moved for a new trial, claiming that the trial court erred by denying his motion to dismiss for lack of a speedy trial. The motion was overruled by operation of law, and Zamora appealed.

*Zamora v. State*, No. 01-15-00367-CR, 2016 WL 3221150, at *1-2 (Tex. App.– Houston [1st Dist.] 2016, pet. ref'd). On appeal Petitioner asserted his right to a speedy trial was violated. *Id*. The appellate court denied the claim on the merits, and the Court of Criminal Appeals denied a petition for discretionary review. (ECF No. 9-9). The United States Supreme Court denied Petitioner's petition for writ of certiorari on May 30, 2017. *Zamora v. Texas*, 137 S. Ct. 2196 (2017).

Petitioner sought a state writ of habeas corpus, alleging he was denied the effective assistance of counsel (failed to investigate missing evidence regarding identity); counsel failed to investigate the State's "missing evidence" and move for a directed verdict on the basis of a *Brady* claim; the appellate court erred in denying his speedy trial claim; and he is actually innocent because the State lost exculpatory evidence. (ECF No. 9-32 at 50-54; ECF No. 9-33 at 1-8). The habeas trial court,

---

[1] Petitioner did not testify at trial and the jury deliberated for approximately one hour before reaching a verdict. (ECF No. 9-33 at 42).

which was also the convicting court, summarily denied relief without a hearing, and the Court of Criminal Appeals denied the writ without written order. (ECF No. 9-33 at 40; ECF No. 9-31).

B.   **Petitioner's Grounds for Relief**

In his federal habeas petition Petitioner asserts:

1. He was denied the effective assistance of counsel because counsel failed to investigate "the missing evidence to his client's identity";

2. He was denied the effective assistance of counsel at trial because trial counsel failed to "investigate the state's missing evidence and motion for a direct verdict in violation of a *Brady* claims";

3. He was denied his right to a speedy trial; and

4. He is actually innocent.

C.   **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## ANALYSIS

A.   **The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an

unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted). Where, as here, the state-court's denial of a petitioner's claims is unexplained, a federal habeas court reviews the state court's "ultimate decision" for reasonableness. *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018). The federal habeas court "must hypothesize the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent. The decision is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry, [the federal habeas court] determine[s] there was no reasonable basis for it." *Id.* (internal citations omitted).

### B. The *Strickland* Standard

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must establish counsel's performance was deficient and the deficient performance prejudiced the defense. *Id.* at 687. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v.*

*Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). Unless the petitioner demonstrates both deficient performance and prejudice it "cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 688-89. Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Additionally, the reasonableness of counsel's actions is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. When considering a state court's application of *Strickland*, the Court's review must be "doubly deferential," to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003)).

C.  **Merits**

1.  **Ineffective Assistance of Counsel - Failure to investigate**

Petitioner asserts counsel's performance was deficient because counsel failed to investigate "the missing evidence to his client's identity." He contends "the original fingerprints taken during the 1986 arrest were not his." (ECF No. 1 at 6). He also alleges "Counsel has failed to investigate and submit the state to account for the lost evidence and authenticate SX 12 [the photo line-up

7

shown to the victim shortly after the crime]." (ECF No. 1 at 11). In response to this claim counsel states:

> I spent 212.50 hours preparing and investigating Mr. Zamora's cases.
> ***
> I saw and visited with Mr. Zamora at the Hays County Court House at least fourteen (14) times in the preparation and investigation of his cases. . . .
> I investigated the States' (sic) missing evidence as to Mr. [Zamora's] identity.
> In regard to the finger print evidence, my finger print expert said that copies of the finger print cards were as satisfactory as the originals in making an analysis. The State's finger print expert agreed.

(ECF No. 8-2 at 2).

Petitioner makes only a conclusory allegation that counsel failed to adequately investigate his case. Counsel avers he did investigate the facts and evidence in Petitioner's case. In denying Petitioner's state habeas application, the state court implicitly found counsel's statement that he thoroughly investigated Petitioner's case to be credible, a finding entitled to deference by this court. *See Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (the "presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Furthermore, the record supports the conclusion that counsel adequately investigated the evidence produced by the State and the fact of the lost evidence; counsel thoroughly cross-examined the State's witnesses' identification of Petitioner as the perpetrator of the crime and highlighted for the jury that the State lost potential exculpatory evidence. After thoroughly reviewing the entire trial transcript, the undersigned also concludes any additional investigation or challenge to the missing

8

evidence would be futile; the victims in this matter identified Petitioner as the perpetrator of the crime and the jury by their verdict found this testimony credible. Accordingly, because Petitioner is unable to establish a reasonable probability that, but for counsel's alleged error, he would have been acquitted, the state court's denial of this claim was not an unreasonable application of *Strickland*.

## 2. Ineffective Assistance of Counsel - Failure to seek a directed verdict

Petitioner contends he was denied effective assistance of counsel because counsel failed to "investigate the state's missing evidence and [move] for a direct verdict [based on ] a Brady claim." He argues "[c]ounsel's failure to investigate and the los[s] of evidence has imposed a showing of prejudice to the defense . . . No Corvette, no crime scene; hair samples taken from the Corvette did not match the girl's samples thus exculpatory evidence." (ECF No. 1 at 12). He further alleges the signature on a credit card receipt purportedly establishing he was the individual who lured the girls into the car and then stopped for gas "was not his." (ECF No. 1 at 6).

Counsel's competence is presumed, and it is the burden of a habeas petitioner to rebut this presumption. *See Strickland*, 466 U.S. 688-89. Counsel's performance is not unconstitutionally defective or prejudicial if counsel fails to make a nonmeritorious motion. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Defense counsel's failure to move for a directed verdict may be considered reasonable trial strategy if counsel reasonably concludes the testimony of a victim and/or witness was legally sufficient to establish guilt. *Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir. 1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was possibly sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted."). A directed verdict may properly be denied where, as in this matter, there is testimony from the victim that the defendant was the

9

perpetrator of the crime, which testimony is supported by circumstantial evidence. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Therefore, because Petitioner has not established his counsel's performance was deficient or prejudicial, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 3. Speedy Trial

Petitioner alleges his right to a speedy trial was violated, a claim he raised on appeal. He contends "the panel in reviewing the record failed to review its legal determination de novo. The 1st Court of Appeals erred in its analysis." (ECF No. 1 at 7).

In denying this claim on appeal, the state appellate court applied the test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Whether the constitutional right to a speedy trial is violated is determined by a balancing process of four factors: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. Unless the delay is presumptively prejudicial, there is no need to inquire into the remaining three factors. *Id.*

After examining the facts and circumstances of Petitioner's speedy trial claim, the Texas Court of Criminal Appeals concluded:

> Based on our analysis of the *Barker* factors, one factor (the length of the delay) weighs in Zamora's favor, but two (the reason for the delay and assertion of the right) weigh against him, and the fourth does not add to either side. The evidentiary record shows that Zamora repeatedly evaded trial and failed to assert his speedy trial right. We conclude that the trial court correctly exercised its discretion by denying Zamora's motion to dismiss.

*Zamora*, 84 S.W.3d at 648.

The Texas appellate court's application of the *Barker* factors was not unreasonable, and is supported by the record in this matter. Petitioner has not overcome the presumption of correctness

applicable to the state court's findings of fact underpinning its conclusion that Petitioner's right to a speedy trial was not violated.

4. **Actual Innocence**

Petitioner asserts a "claim of Actual Innocence," asserting "his incarceration is a direct violation of the DUE PROCESS [CLAUSE] OF THE 14th Amend.," citing "ineffective assistance of counsel . . . and the state's nondisclosure of exculpatory evidence, under *Brady* claim." (ECF No. 1 at 7). In asserting this claim in his state habeas action, Petitioner alleged:

> Constitutional errors caused the incarceration of someone who is actually innocent. The supporting evidence of actual innocence is on the pretrial record, but counsel failed to bring such evidence forward to the jury's attention . . . What is indisputable is that the State's loss of evidence may deprive a defendant of the Right to a fair trial. . . . Absence of evidence in a criminal case is basis for reasonable doubt.

(ECF No. 9-33 at 7).

A true actual innocence claim is not itself an independent ground for federal habeas corpus relief. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (collecting cases). Broadly construing this claim, the undersigned notes Petitioner presents a claim of legal, rather than factual, innocence. *See Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means factual, as opposed to legal, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey* [*v. Zant*, 499 U.S. 467 (1991) ], means that the person did not commit the crime.").

Petitioner has not established his legal innocence pursuant to the alleged errors in his criminal proceedings. The elements of a *Brady* claim are: (1) the evidence at issue must be favorable to the

accused; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material" to the defendant's guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The good or bad faith of the prosecution in suppressing the evidence is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The *Brady* doctrine is not implicated in this matter because the allegedly exculpatory evidence was not suppressed by the State, the evidence was lost by the State.

To be entitled to relief on a claim of lost evidence, the exculpatory value of the evidence must be apparent before the evidence was destroyed. *California v. Trombetta*, 467 U.S. 479, 489 (1984). If the exculpatory value of the purportedly destroyed evidence was in question, the failure of law enforcement to preserve the evidence does not violate the Due Process Clause absent a showing of bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Petitioner makes only a conclusory and unsupported assertion that the State or the police department destroyed any evidence, rather than simply losing the evidence. At best, he makes only a conclusory and unsupported allegation that these entities acted in bad faith. Petitioner's conclusory allegations are insufficient to establish an entitlement to habeas relief. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (holding speculative or conclusory allegations cannot support a *Brady* claim); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). Petitioner makes no showing of bad faith and the record belies such a claim. Accordingly, to the extent the state court construed this claim as asserting a violation of *Brady* or *Youngblood*, the state court's denial of relief was not an unreasonable application of federal law.

To the extent Petitioner asserts the evidence was insufficient to sustain his conviction, his claim also fails. The controlling federal law with regard to an insufficiency of the evidence claim is stated in *Jackson v. Virginia*, 443 U.S. 307 (1979). To be entitled to relief on a sufficiency of the evidence claim, a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324-26. When applying this standard, all evidence is viewed in the light most favorable to the prosecution, and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *Id.* at 319; *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A federal habeas court "must defer to the factual findings in the state court proceedings," and "respect the ability of the fact-finder to evaluate the credibility of the witnesses." *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).

In this matter, the jury's decision was predicated on circumstantial evidence and the testimony of the victims and the testimony of the investigating officers and circumstantial evidence. The credibility of witnesses is generally beyond the scope of review in a federal habeas corpus proceeding applying *Jackson*. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Ramirez v. Dretke*, 398 F.3d at 695. Additionally, circumstantial evidence is sufficient to support a conviction under the *Jackson* standard. *Green v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998); *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). Accordingly, the evidence was sufficient to sustain Petitioner's conviction and the state court's denial of this claim as construed to be a *Jackson* claim was not an unreasonable application of federal law.

Petitioner has not established an independent constitutional violation occurring in his state criminal proceedings and, accordingly, the state appellate court's denial of his claim that he is "actually innocent" was not contrary to or an unreasonable application of federal law. *See Reed v.*

*Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (collecting cases holding a "free-standing" claim of actual innocence is not cognizable in a federal habeas action); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006).

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of the section 2254 petition, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985).

**SIGNED** on June 5, 2019.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE